**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHANNA MARQUEZ,**

**Plaintiff,**

v.

**5:11-CV-750**
**(FJS/DEP)**

**TOWN OF DEWITT; RICHARD KOVALSKY,**
**individually and as a police officer of the Town of DeWitt;**
**MIKE PUMA, individually and as a police officer of the**
**Town of DeWitt; BRENTON WHITE, individually and as**
**a police officer of the Town of DeWitt; EUGENE G.**
**CONWAY, individually and as the Chief of Police of the**
**Town of DeWitt; JOHN AND JANE DOES 1-10,**
**individually and as police officers of the Town of DeWitt,**

**Defendants.**

_____

**APPEARANCES**

**OFFICE OF JOSE E. PEREZ**
120 East Washington Street – Suite 925
Syracuse, New York 13202
Attorneys for Plaintiff

**OFFICE OF FRANK W. MILLER**
6575 Kirkville Road
East Syracuse, New York 13057
Attorneys for Defendants

**OF COUNSEL**

**JOSE E. PEREZ, ESQ.**

**FRANK W. MILLER, ESQ.**
**BRYAN N. GEORGIADY, ESQ.**

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I.  INTRODUCTION**

Plaintiff brings this action alleging various claims against Defendants for discrimination, assault, false imprisonment, malicious prosecution, gross negligence, and "purposeful nonfeasance," as well as various related state-law and constitutional claims.

Plaintiff originally filed her complaint on July 1, 2011, in the United States District Court for the Northern District of New York.  In her Complaint, Plaintiff seeks compensatory damages in an amount to be proven at trial, punitive and exemplary damages against each Defendant, costs of suit, reasonable attorney's fees pursuant to 42 U.S.C. § 1983 and as otherwise authorized by statute or law, that the Court assume pendent jurisdiction over the state-law claims, pre- and post-judgment interest as permitted by law, a jury trial, and such other relief as the Court may deem proper.

In her Complaint, Plaintiff alleges that Defendant Kovalsky, a court security officer ("CSO") of the Town of DeWitt Court,[1] targeted her and her sister for discrimination due to their race when they were sitting in the gallery of the Town of DeWitt Courthouse.  Plaintiff claims that Defendant Kovalsky wrongfully ordered her to exit the courtroom and then used excessive force while ejecting her from the courtroom.  Plaintiff further asserts that Defendant Puma, another CSO, assisted Defendant Kovalsky in using excessive force to arrest her.  Plaintiff contends that Defendants Puma and Kovalsky then conspired with Defendant Brenton White, an officer of the Town of DeWitt Police Department, to have Plaintiff falsely charged with multiple crimes and

---

[1] Throughout her filings, Plaintiff alleges without citation that Defendants Kovalsky and Puma are Town of DeWitt police officers.

sent to the Onondaga County Justice Center ("OCJC").  Plaintiff asserts that she remained in jail for two weeks, during which time she suffered various constitutional violations.  Finally, Plaintiff contends that

> the Town of Dewitt is legally responsible for the incident, injuries and damages . . . and that each of the Defendants directly and proximately caused Plaintiff's injuries and damages by reason of their negligence, intentional acts or conduct, breach of duty, negligent supervision, management or control, violation of constitutional rights, or by reason of other personal, vicarious or imputed negligence, fault, or breach of duty, whether based on agency, employment, control, whether severally or jointly, or whether based on any other act or omission.

*See* Complaint at ¶ 29.

Based upon these allegations, Plaintiff asserts eight causes of action:

(1)  Defendants infringed and conspired to infringe Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights to be free from unreasonable searches and seizures, deprivation of liberty without due process of law, cruel and unusual punishment, false arrest and imprisonment.

(2)  Defendants infringed Plaintiff's Fourth and Fourteenth Amendment rights to be free from unreasonable and excessive force.[2]

(3)  Defendants infringed Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights to be free from false arrest and imprisonment.[3]

(4)  Defendants infringed Plaintiff's "rights, privileges and immunities" under 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986 as well as the Fourth, Eighth, and Fourteenth Amendments to a timely court appearance, assignment of counsel or opportunity to retain counsel, and proper medical care.

(5)  Defendants discriminated against Plaintiff because of her race.

(6)  Defendants Eugene J. Conway and Town of DeWitt infringed Plaintiff's "rights, privileges, and immunities" under 42 U.S.C. § 1983 and the Fourth, Eighth, and Fourteenth Amendments by negligently training police officers, negligently

---

[2] This claim appears to be wholly redundant of portions of Plaintiff's first claim.

[3] This claim also appears to be wholly redundant of portions of Plaintiff's first claim.

supervising police officers, and disregarding previous allegations of police brutality.

(7)     Defendants violated Plaintiff's rights under the laws of the State of New York by committing the following against Plaintiff: assault, false imprisonment, malicious prosecution, negligence, discrimination, gross negligence, and purposeful nonfeasance.

(8)     Defendant Town of DeWitt is liable to Plaintiff for Defendant police officers' actions pursuant to New York State General Municipal Law § 50-j, and the theory of *respondeat superior*.

Currently before the Court is Defendants' motion for partial summary judgment, seeking dismissal of Plaintiff's conspiracy claim, Plaintiff's other claims against Defendants Brenton White, John and Jane Does 1-10, Conway, and the Town of DeWitt; and Plaintiff's claims arising from her time at the OCJC.

### III.  DISCUSSION

**A.     Plaintiff's conspiracy claim**

*1. Standard of review*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  At the summary judgment stage, the court's role is to determine "whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In making this determination, the court must view the evidence in the record and draw all reasonable inferences in the light most favorable to the non-moving party.  *See Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*, No. 1:06–CV–871, 2010 WL 2735701, *3 (N.D.N.Y. July 9, 2010) (citation omitted).

Summary judgment is appropriate if the party that bears the burden of proof at trial fails to establish an essential element of its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson*, 477 U.S. at 247–48. Thus, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted).

### 2. Plaintiff's conspiracy claim

There are four elements of a conspiracy to violate civil rights under § 1985(3). *See United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983). The first element of that claim is simply "a conspiracy." *See id.* A conspiracy need not consist of an explicit agreement between the alleged conspirators, but a plaintiff "must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999).

Here, Plaintiff alleges that Defendant Puma joined Defendant Kovalsky in arresting her *after* Defendant Kovalsky had targeted her for ejection from the courtroom and begun removing her. She does not allege, however, that Defendant Puma heard Defendant Kovalsky make the statement, "this is what I have to do to Hispanic people," a statement she describes as occurring prior to Defendant Puma's arrival to assist. She does not allege that Defendant Puma would have responded differently to the situation if Defendant Kovalsky had been ejecting a white person from the courtroom.

Plaintiff also alleges that Defendants Kovalsky and Puma agreed with Defendant White to bring charges against Plaintiff. However, Plaintiff does not allege that Defendant White could have or should have known that these charges were false, as Plaintiff alleges, or that Defendant White could have or should have known that Defendant Kovalsky or Defendant Puma had targeted Plaintiff because of her race. Plaintiff has not disputed Defendants' claims that the police station is located in a separate wing of the DeWitt Town Hall from the courtroom, that Defendant White was summoned to the courtroom from the police station after the altercation between Plaintiff and Defendants Kovalsky and Puma was underway, that Plaintiff was already in handcuffs in the lobby when Defendant White encountered her, and that Defendant White decided to charge Plaintiff after Defendants Kovalsky and Puma provided sworn statements that Plaintiff had caused a disturbance in the courtroom and resisted arrest.

In summary, Plaintiff has not alleged any explicit or implicit communication between Defendant Kovalsky and any other person that could suggest an agreement to discriminate against Plaintiff. Plaintiff has likewise not alleged that anyone other than Defendant Kovalsky would have acted differently if she were white. Accordingly, the Court grants Defendants' motion for summary judgment with respect to those aspects of Plaintiff's first cause of action that allege a conspiracy to violate her civil rights in violation of 42 U.S.C. § 1985(3).

**B.      Plaintiff's malicious prosecution claim**

Defendants and Plaintiff did not address this issue in their filings, but the Court grants Defendants' motion for summary judgment on Plaintiff's malicious prosecution claim for failure to state a cause of action upon which relief may be granted. In order to state a claim for the tort of malicious prosecution under New York State law, a plaintiff must prove "'(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in

plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (quoting *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)) (citing *Broughton v. State*, 37 N.Y.2d 451, 458, 373 N.Y.S.2d 87, 95, 335 N.E.2d 310 (N.Y.) *cert. denied*, 423 U.S. 929, 96 S. Ct. 277, 46 L. Ed. 2d 257 (1975)). Here, Plaintiff has not alleged the second element, that proceedings were terminated in her favor. Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's malicious prosecution claim against all Defendants.

**C.     Plaintiff's claims against Defendant White**

A police officer has sufficient probable cause to escape liability for false arrest where he has "'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010) (quotation omitted). New York law also provides that a defendant may defeat a claim for malicious prosecution where the defendant had probable cause, to wit: "'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'" *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (quotation and other citation omitted).

Here, Defendant White clearly had probable cause to arrest and charge Plaintiff. An eyewitness, Defendant Kovalsky, reported to Defendant White that Plaintiff had disrupted courtroom proceedings and resisted arrest. Defendant Kovalsky and another eyewitness, Defendant Puma, signed sworn affidavits alleging that Plaintiff had committed actions that would satisfy all of the elements of the crimes of second degree criminal contempt, second degree obstruction of governmental administration, and resisting arrest. Defendant White

completed the Misdemeanor Information charging Plaintiff with the aforementioned offenses based upon the two eyewitnesses' affidavits.

Plaintiff has not alleged any facts to indicate that Defendant White should have doubted the truthfulness of these eyewitness accounts, and thereby believed that no probable cause existed for Plaintiff's arrest of prosecution. Plaintiff has likewise alleged no facts to indicate that Defendant White took any other wrongful action. Accordingly, the Court grants Defendants' motion for summary judgment on all claims against Defendant White.

**D.       Plaintiff's claims against Defendants John and Jane Does 1-10**

Plaintiff does not oppose Defendants' motion to dismiss the unnamed police officers from the suit for lack of sufficiently specific allegations. Accordingly, this Court dismisses John and Jane Does 1-10 from Plaintiff's suit.

**E.       Plaintiff's supervisory liability claim against Defendant Conway**

The Second Circuit has articulated five theories under which a plaintiff may hold a supervisory defendant responsible for constitutional violations. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). However, the Court of Appeals has declined to extend that liability to officials where a plaintiff "sets forth no facts in [the plaintiff's] own knowledge that relate to [the defendant] . . . nothing that would support a claim that [the defendant] knew or should have known of the events of which [the plaintiff] complains." *Id.* at 873-74. In a case where a plaintiff sued the Commissioner of the New York Department of Correctional Services, alleging failure to supervise corrections officers at one facility, the court held that "[t]he bare fact that [Defendant Superintendent] occupies a high position in the New York prison hierarchy is insufficient to sustain [the plaintiff's] claim." *Id.* at 874 (citations and footnote omitted).

Here, Plaintiff has failed to allege or argue any reason why Defendant Conway knew or should have known about the actions of Defendants Kovalsky and Puma. She has also failed to allege any supervisory relationship between Defendant Conway and the CSOs or to provide any authority or argument why the Court should presume that such a relationship existed or should have existed. Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's supervisory liability claim against Defendant Conway.

**F.      Plaintiff's *Monell* claim against Defendant Town of DeWitt**

Plaintiff is unable to sustain a *Monell* claim against Defendant Town of DeWitt because she has not alleged sufficient facts to establish a claim of a discriminatory policy or practice. She relies on a theory of deliberate indifference, but her allegations fail to address the second element of a deliberate indifference claim: that "the situation [in which employees will often find themselves] either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992). A "difficult choice" includes the decision of "[w]hether to use deadly force in apprehending a fleeing suspect . . . because the use of more than the application of common sense is required." *Id.* In other situations, the proper choice might be clear, but it might become difficult where "the employee has powerful incentives to make the wrong choice." *Id.*

Here, there is no allegation in Plaintiff's pleadings that CSOs in the Town of DeWitt are likely to confront difficult choices involving civil rights while they supervise visitors in the courtroom gallery. There is no allegation that the officers in such a situation would have to use anything more than their common sense in deciding whether to remove individuals from the gallery. There is also no allegation that the training CSOs receive in the New York State court

system is so inadequate that Defendant Town of DeWitt should augment it with additional training.  Furthermore, Plaintiff has not alleged that any powerful incentives exist to make CSOs' decision-making process in the courtroom more difficult.

Likewise, Plaintiff has not alleged any facts to indicate that there is a history of civil rights violations among the named Defendants or in Defendant Town of DeWitt's courtroom. She has not alleged that Defendants Kovalsky or Puma had ever violated anyone's civil rights prior to June 22, 2010.  The deposition pages she cites do not mention any prior incident involving the officers, any prior accusation against the officers, or any prior evidence of the officers' allegedly discriminatory tendency.

Finally, Plaintiff's allegations could be reasonably described as a "single, detached incident of misconduct by a few non-policy level officers, [which] in no way suggests a deliberate choice by municipal policymakers to turn a blind eye to unconstitutional conduct." *See Abreu v. City of New York*, 657 F. Supp. 2d 357, 361 (E.D.N.Y. 2009) (citations omitted). Accordingly, the Court grant's Defendants' motion for summary judgment as to Plaintiff's claim for *Monell* liability against Defendant Town of DeWitt.

**G.      Plaintiff's state-law negligence claim against Defendant Conway**

Under New York law, the first element of a claim for negligent hiring, retention, or supervision requires a plaintiff to show "that the tortfeasor and the defendant were in an employee-employer relationship[.]"  *See Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citation omitted).  Here, Plaintiff has pled no allegation or argument to indicate that Defendants Kovalsky or Puma were in an employer-employee relationship with Defendant Conway.  Plaintiff has not explicitly challenged any of Defendants' arguments or allegations that Defendants Kovalsky and Puma worked directly for the Town Court justices, and not the Police

Department.  Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's negligence claim against Defendant Conway.


**H.**      **Plaintiff's negligence claim against Defendant Town of DeWitt**

Under New York law, the second element of a claim for negligent hiring, retention, or supervision requires a plaintiff to show "that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury *prior* to the injury's occurrence[.]"  *Ehrens*, 385 F.3d at 235 (quotation omitted) (emphasis added).  Here, Plaintiff has introduced no evidence that Defendant Town of DeWitt knew or should have known that Defendants Kovalsky or Puma had a propensity for any of the conduct of which Plaintiff complains.  Plaintiff argues that her Notice of Claim "informed" Defendant Town of DeWitt about Kovalsky and Puma's alleged violations.  This notification obviously could not have happened until after the occurrence of Plaintiff's alleged injuries, which fails the *Ehrens* test for "prior" notice.

Plaintiff's alternative argument on this subject, that Defendant Town of DeWitt's alleged policy or custom of failure to train its officers caused Plaintiff's constitutional violations, is a matter for *Monell* liability, which the Court has addressed in Part F, *supra*.  Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's negligence claim against Defendant Town of DeWitt.


**I.**      **Plaintiff's claims arising from harms Plaintiff allegedly sustained at the OCJC**

Plaintiff has affirmed that she decided not to pursue a claim against Onondaga County and the OCJC because her attorney cannot participate in such a lawsuit due to a conflict of interest, and she has decided not to hire a different attorney.  Plaintiff argues that Defendants can

be held responsible for the harms she allegedly suffered at the OCJC because Defendants could reasonably have foreseen that their unlawful arrest would lead to Plaintiff's detention there for several days.

### 1. With regard to Defendant Conway

The Second Circuit has held that "'foreseeability and causation . . . are issues generally and more suitably entrusted to fact finder adjudication[.]'" *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 216 (2d Cir. 2002) (quotation omitted). However, a court may rule as a matter of law on foreseeability and causation where the claim rests upon "'independent intervening acts which operate upon but do not flow from the original negligence[.]'" *Martin v. City of New York*, 793 F. Supp. 2d 583, 586 (E.D.N.Y. 2011) (quoting *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 170, 414 N.E.2d 666, 670 (1980)).

The Second Circuit has also held that the intervening exercise of judgment by an independent decision maker breaks the chain of causation between a law enforcement defendant and a plaintiff's eventual harm "in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment." *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (citations omitted).

Here, Plaintiff has made no allegation to suggest that Defendant Conway or any member of the Police Department knew or should have known that the arrest and charging of Plaintiff was unlawful or improper. For the reasons listed in Part C, *supra*, Defendant Conway's employee, Defendant White, had probable cause to arrest and charge Plaintiff based on the statements and sworn affidavits of Defendants Kovalsky and Puma.

Similarly, Plaintiff has made no allegation to suggest that Defendant Conway or any of his employees knew or should have known that constitutional violations had occurred, were

occurring, or would occur at the OCJC. Plaintiff does not dispute Defendants' assertions that the OCJC is managed by members and agents of the Onondaga County Sheriff's Department, that an arraigning judge issued a securing order remanding Plaintiff to the OCJC, that the DeWitt Police Department does not have any authority over the treatment a detainee receives in OCJC custody, that it is the Sheriff's responsibility to transport detainees back to court for a future court date, and that the DeWitt Police Department has never been aware of any information suggesting that the OCJC is not capable of protecting a detainee's constitutional rights, nor has it ever been aware of any information suggesting that the Justice Center habitually violates detainees' constitutional rights.

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's claims against Defendant Conway regarding harms Plaintiff allegedly suffered at the OCJC.

### 2. With regard to Defendants Kovalsky and Puma

A reasonable jury might find that Defendants Kovalsky and Puma were responsible for Plaintiff's incarceration at the OCJC if it were to find that these Defendants made false statements about Plaintiff to Defendant White, thus precipitating Plaintiff's arrest, charge, and detention. As the Second Circuit explained in *Townes*, the independent exercise of judgment by another decision-maker breaks the chain of causation between a defendant and a plaintiff's harm "in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment." 176 F.3d at 147 (citations omitted); *see also White v. Frank*, 855 F.2d 956, 962 (2d Cir. 1988) (stating that "the public prosecutor's role in a criminal prosecution will not necessarily shield a complaining witness from subsequent civil liability where the witness's testimony is knowingly and maliciously false" (citations omitted)). Here,

Plaintiff has alleged that Defendants Kovalsky and Puma made statements that could have misled Defendant White and the arraigning judge. If this allegation is true, Defendants Kovalsky and Puma may be held liable for the fact that Plaintiff was ultimately incarcerated.

However, Defendants Kovalsky and Puma cannot be held liable for the unconstitutional conditions that Plaintiff alleges she endured at the OCJC. Where an arresting officer passes custody of a detainee to a detention facility, the responsibility for subsequent unforeseeable harm to the detainee passes as well. *See Martin*, 793 F. Supp. 2d at 587-88. This principle applies where the subsequent harm in detention "is not a likely consequence of arrest." *Id.* at 588. Here, Plaintiff alleges that she was subject to several constitutional violations while in the custody of the OCJC. Plaintiff does not allege that these violations are a "likely consequence" of arrests in the Town of DeWitt or in Onondaga County.

Detention in a corrections facility is a likely consequence of arrest, but unconstitutional maltreatment within such a facility is not. Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's claims against Defendants Kovalsky and Puma regarding the harms she allegedly suffered after her remand to the OCJC.

### 3. With regard to Defendant Town of DeWitt

Even if a jury found that Plaintiff's incarceration was the result of a § 1983 violation that Defendants Kovalsky and Puma committed, it could not hold Defendant Town of DeWitt liable for such a violation for the reasons set forth in Part L, *infra*. Therefore, the Court grants Defendants' motion for summary judgment as to Plaintiff's claims against Defendant Town of DeWitt regarding the harms she allegedly suffered after her remand to the OCJC.

**J.     Plaintiff's remaining state law claims, with the exception of the state law assault claims against Defendants Kovalsky and Puma**

*1. Plaintiff's false arrest and false imprisonment claims*

There is no private right of action under the New York State Constitution where remedies are available under § 1983.  *See Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 248 (N.D.N.Y. 2008) (quotation omitted).  The equal protection provisions in the New York State Constitution are analogous to the United States Constitution's Equal Protection Clause.  *See Hayut v. State Univ. of New York*, 352 F.3d 733, 754 (2d Cir. 2003) (citing *Brown v. State*, 89 N.Y.2d 172, 190, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996) (stating that "[Article I, section 11 of the New York State Constitution] was intended to afford coverage as broad as that provided by the Fourteenth Amendment to the United States Constitution" (citation omitted)).  Section 1983's false arrest and malicious prosecution provisions are also substantially the same as the corresponding New York law provisions.  *See Boyd v. City of New York*,  336 F.3d 72, 75 (2d Cir. 2003) (citation omitted).  In New York, false arrest and false imprisonment are one and the same.  *See Hershey v. Goldstein*, 938 F. Supp. 2d 491, 515 (S.D.N.Y. Apr. 9, 2013) (citation omitted).  Therefore, Plaintiff's claims for discrimination, false imprisonment, and malicious prosecution are sufficiently encompassed in her § 1983 claims and cannot be the basis of an independent state-law claim.  Accordingly, the Court grants Defendants' motion for summary judgment with regard to these claims.

*2. Plaintiff's gross negligence claim*

Gross negligence and deliberate indifference are closely related concepts.  *See Doe v. New York City Dep't of Soc. Servs.*, 649 F.2d 134, 143 (2d Cir. 1981).  Although they are not literally coextensive, because the former is a type of conduct and the latter is a state of mind,

gross negligence creates a strong presumption of deliberate indifference. *See id.* Deliberate indifference is the standard by which a municipality's liability for failure to supervise its employee is determined under § 1983. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994). Therefore, Plaintiff's claim for gross negligence is also sufficiently encompassed in her § 1983 claim and cannot be the basis of an independent state-law claim. Accordingly, the Court grants Defendants' motion for summary judgment with regard to this claim.

### 3. Plaintiff's purposeful nonfeasance claim

Purposeful nonfeasance is not an independent tort but serves as a basis of liability for an intentional tort if a defendant owes a plaintiff a duty to act. *See* 86 C.J.S. Torts § 2 (2014); *Bonner v. Coughlin*, 545 F.2d 565, 568-69 (7th Cir. 1976). Therefore, Plaintiff cannot bring an independent claim against Defendants for purposeful nonfeasance. Accordingly, the Court grants Defendants' motion for summary judgment with regard to this claim.

### 4. Negligence

Under New York law, "false arrest, false imprisonment and unconstitutional search (or its attendant torts, assault and battery) are not acts of negligence, and [a] plaintiff cannot recover for them under general principles of negligence law." *Sarnicola v. Cnty. of Westchester*, 229 F. Supp. 2d 259, 277 (S.D.N.Y. 2002) (citations omitted); *see also Delaney v. City of Albany*, No. 1:08-cv-788, 2010 WL 4740185, *2 (N.D.N.Y. Nov. 16, 2010) (quotation omitted). Therefore, Plaintiff cannot bring a state-law claim against Defendants for negligence arising from her allegedly false arrest, imprisonment, and unconstitutional search by Defendants Kovalsky, Puma,

and White.  Accordingly, the Court grants Defendants' motion for summary judgment with

respect to these claims.


   *5. Summary*

   Based on the foregoing, the Court grants Defendants' motion for summary judgment with

respect to all of Plaintiff's remaining state-law claims, with the exception of her assault claims

against Defendants Kovalsky, Puma, and the Town of DeWitt.


**K.      Plaintiff's claims against Defendant Town of DeWitt pursuant to New York General
         Municipal Law § 50-j**

   Section 50-j of the New York General Municipal Law provides that a municipality

> shall assume the liability to the extent that it shall save harmless[] any
> duly appointed police officer of such municipality, authority or agency for
> any negligent act or tort complained of, provided such police officer, at the time of the
> negligent act or tort complained of, was acting in the performance of his
> duties and within the scope of his employment.

N.Y. Gen. Mun. Law § 50-j(1) (McKinney 2014).

   The New York Criminal Procedure Law defines a "peace officer" as "a person listed in

section 2.10 of [Chapter 11-A]."  N.Y. Crim. Proc. Law § 1.20(33) (McKinney 2013).  Section

2.10 of the cited chapter includes among the people listed as peace officers "[u]niformed court

officers of the unified court system."  *Id.* at § 2.10(21)(a).  Immediately after defining "peace

officer," the Criminal Procedure Law goes on to list the twenty-two types of officials whom the

law defines as "police officers."  *See id.* at §§ 1.20(34)(a)-(v).  No CSOs or other court officials

are listed among the police officers.  *See id.*

   Plaintiff argues that Defendants Kovalsky and Puma were police officers under § 50-j.

She argues that "General Municipal Law does not have anything to do with New York State

Criminal Procedure Law. . . . [A] cursory review of NY General Municipal Law reveals that there is no definition differentiating peace and police officers." *See* Dkt. No. 23 at 27. Plaintiff asserts that §§ 50-m and 50-n of the General Municipal Law use the terms "peace officer" and "police officer" interchangeably with the language "whether any such officers . . . ." *See id.*

Plaintiff's first cited statute, § 50-m of the General Municipal Law, is a provision allowing Suffolk County to act on local authority to "provide for the defense of any civil action or proceeding brought against a duly appointed police or peace officer, as defined in section 1.20 of the criminal procedure law, employed by the county of Suffolk . . . ." *See* N.Y. Gen. Mun. Law § 50-m(1). This provision, if it has any application outside of Suffolk county, would undermine both of Plaintiff's arguments. In the first place, it is a provision of the General Municipal Law that defers to definitions listed in the Criminal Procedure Law. It indicates a general relationship of language between the two bodies of law, as well as the Municipal Law's acknowledgment of sections of the Criminal Procedure Law where peace officers and police officers are separately defined. Second, this passage indicates that "police" and "peace officers" are not synonymous. Otherwise, listing them both would be redundant.

Plaintiff's second cited statute, § 50-n, similarly allows for the provision of local defense for "a duly appointed peace officer, sheriff, under-sheriff or deputy sheriff of the county of Nassau. . . ." *See* N.Y. Gen. Mun. Law § 50-n. Like the preceding section, § 50-n does not suggest that peace officers and police officers are synonymous under the laws of New York State.

Here, Defendants Kovalsky and Puma were uniformed CSOs employed by the New York State Unified Court System. Defendants Kovalsky and Puma were not Town of DeWitt police officers. Given Plaintiff's lack of meritorious claims against any Defendants who are or were

police officers, the Court grants Defendants' motion for summary judgment with regard to all of Plaintiff's claims under § 50-j.

## I.    Plaintiff's *respondeat superior* § 1983 claims and assault claims against Defendant Town of DeWitt

Plaintiff cannot bring a § 1983 claim against Defendant Town of DeWitt or any other entity under a *respondeat superior* theory.  Section 1983 will not support such a claim.  *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (citation omitted).

As for Plaintiff's assault cause of action, such a claim may be brought under a theory of *respondeat superior*.  *See* 34 A.L.R.2d 372 (Originally published in 1954).  However, *respondeat superior* claims are only valid against the employer of an employee or servant who commits the alleged tort, not against a party who has engaged an independent contractor.  *See Berg v. Parsons*, 156 N.Y. 109, 112-13 (1898).  New York law allows a court to determine, as a matter of law, that a worker was an independent contractor and not an employee where "the arrangement between [the hiring party] and [worker] was so altogether lacking in those marks which ordinarily characterize the relationship of employer and employee that [the worker] must be deemed, as a matter of law, to have been an independent contractor."  *In re Morton*, 284 N.Y. 167, 173 (1940).

Defendants argue that Defendant Town of DeWitt cannot be liable for Defendant Kovalsky's and Puma's alleged assault under the *respondeat superior* theory because they were independent contractors.  Defendants cite a decision of the New York State Appellate Division, First Department, for the assertion that "[t]he mere retention of general supervisory powers over the acts of the independent contractor will not impose liability[.]"  *Wright v. Esplanade Gardens*, 150 A.D.2d 197, 198 (1st Dep't 1989) (citation omitted).

19

In Defendants' cited case, a plaintiff sued a landowner for personal injuries that he

sustained when the landowner's contracted security worker struck him with a golf cart.  *See id.*

at 197-98.  The First Department reversed the Supreme Court's grant of summary judgment,

which had been based on a finding that the security service was an independent contractor.  *See*

*id.* at 198.  The court reasoned, citing *Morton*, 284 N.Y. at 172, that where an employer

"assumes control of the details of the work *or some part of it*, then . . . the employer may himself

be liable."  *See id.* (citation omitted) (emphasis added).  The court noted that the plaintiff had

> submitted deposition testimony by the operations manager of [the
> security service] indicating that [the landowner] actually directed
> [the security service] to drive golf carts upon the walkways of its
> premises, including the specific location of the accident.  This, in
> itself, may have created an issue of fact as to whether [the
> landowner] exercised control and direction.

*Id.*

Here, Plaintiff has submitted an admission by Defendant Kovalsky that, "I guess the

[Town Court] judge is ultimately the supervisor."  *See* Kovalsky Depo. at 29.  She has also

submitted the following deposition testimony of Defendant Puma:

> Q. . . . And when someone is being disruptive in the courtroom, is
> there any specific policy you have to follow in order for you to tell
> them to stop, or it's based on your decorum, knowledge and
> experience?
>
> A. It's based on the decorum of the judges that we work with, that
> they would like to have quiet and attention.

*See* Puma Depo. at 48.  Plaintiff has also submitted the CSOs' employment contract, which

includes a section describing the "Scope of Services."  *See* Puma Contract at ¶ 2.  This section

provides the following specific requirements:

> a. Arriving at all scheduled Court dates a minimum of thirty (30)
> minutes before the commencement of Court for the purposes of
> conducting safety checks in parking lots, bathrooms, entrance and

> exitways to the facilities where the Court is located and search for
> any and all contraband or weapons that may be stored on the
> property;
> b. Operate and secure a magnetometer that shall be positioned at the
> entranceway to the Courtroom;
> c. Search any and all bags and/or boxes that are being brought into
> the courtroom and conduct quick wand searches of persons entering the
> courtroom if the situation is warranted;
> d. Provide security inside and outside of the courtroom; to wit, when
> Court is in session, one Officer shall remain in the Courtroom
> while the other Officer shall remain stationed at the magnetometer;
> e. Upon adjournment of Court, the Officer shall conduct the same
> safety check: and/or sweep as was conducted prior to the start of
> the scheduled Court date.

*See id.*

Plaintiff's submissions have created a sufficiently triable issue of fact to overcome the low bar that *Morton* established. Accordingly, the Court denies Defendants' motion for summary judgment regarding Plaintiff's *respondeat superior* claim against Defendant Town of DeWitt for assault but grants the motion to dismiss Plaintiff's *respondeat superior* claim under § 1983.

### IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, *see* Dkt. No. 18, is **GRANTED** as to

(1) Plaintiff's conspiracy claims under 42 U.S.C. § 1985(3) in the first and fourth causes of action against all Defendants;

(2) Plaintiff's causes of action against Defendant White;

(3) Plaintiff's causes of action against Defendants John and Jane Does 1-10;

(4) Plaintiff's causes of action against Defendant Conway;

(5) Plaintiff's *Monell* supervisory claims under 42 U.S.C. § 1983 in the sixth cause of action against Defendant Town of DeWitt;

(6) Plaintiff's negligence claim in the sixth cause of action against Defendant Town of DeWitt;

(7) Plaintiff's constitutional claims under § 1983 arising from Plaintiff's incarceration at the OCJC in the fourth cause of action against all Defendants, with the exception of the claim of false imprisonment against Defendants Kovalsky and Puma;

(8) Plaintiff's state law claims in the seventh cause of action against all Defendants, with the exception of the assault claims against Defendants Kovalsky, Puma, and the Town of DeWitt;

(9) Plaintiff's claim under New York General Municipal Law § 50-j in the eighth cause of action against Defendant Town of DeWitt; and

(10) Plaintiff's *respondeat superior* claim arising from the alleged § 1983 violation in the eighth cause of action against Defendant Town of DeWitt; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with regard to

(1) Plaintiff's § 1983 claim of false imprisonment against Defendants Kovalsky and Puma, and

(2) Plaintiff's state-law assault claims against Defendants Kovalsky, Puma, and the Town of DeWitt; and the Court further

**ORDERS** that counsel shall participate in a telephone conference on **April 22, 2015**, at **9:30 a.m.** to schedule a trial in this matter. The Court will provide counsel with the dial-in instructions prior to the conference.

**IT IS SO ORDERED**

Dated: January 28, 2015
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge